U.S. DISTRICT COURT
**N.D. OF N.Y.**
**FILED**

AUG 0 3 2005

LAWRENCE K. BAERMAN, CLERK
ALBANY

UNITED STATES DISTRICT COURT CIVIL ACTION
NORTHERN DISTRICT OF NEW YORK

CIVIL ACTION
No. _____
JURY TRIAL

Edward and Kate Holley, individually and on behalf of their son, Caleb Holley

**05 -CV- 0972**

Plaintiffs,

GLS / DRH

vs.

Board of Education of the Shenendehowa Central School District, Board of Education Members, Karen Boiko, Gary DiLallo, Vincent Aceto, William Casey, Charles Huff, Erika Riebel, all in their individual and official capacities, Dr. Robert McClure, as former Superintendent of Shenendehowa Central School District, individually and in his official capacity, Michael Smith, Director of Student Services of Shenendehowa Central School District, individually and in his official and professional capacity, Dorothy Donlon, as Former CSE Chairperson, individually and in her official and professional capacity, Sandra Gonzalez, as CSE Chairperson, individually and her official and professional capacity, Dr. Michelle Boretti, as School Psychologist and CSE Member, individually and in her official and professional capacity, Erin Iovinella- Serritella, as School Psychologist and CSE Member, individually and in her official and professional capacity, Jean- Marie Wendth, as Special Education Teacher and CSE Member, individually and in her official and professional capacity, Joan Frolish, as Speech and Language Pathologist and CSE Member individually and in her official and professional capacity,
and
New York State Education Department, Dolores Freed, Hearing Officer, individually and in her official capacity, Nellie Perez, Appeals Coordinator, individually and in her official capacity, Paul Kelly, State Review Officer, individually and in his official capacity.

Defendants.

**COMPLAINT**

Outline

A. Introduction and Nature of the Case ………… p. 2- 3

B. Parties …………………………………………p. 3- 6

C. Jurisdiction and Venue ………………………..p. 6- 8

D. Exhaustion of Remedies………………………p. 8

E. Facts……………………………………………p. 8- 33

F. Causes of Action………………………………p. 33-38

G. Prayer for Relief………………………………p. 38-40


**A. Introduction and Nature of the Case**

1.  This is a civil action at law, at common law, and also in equity, to vindicate and restore various rights of the Plaintiffs secured under federal law to vindicate and restore their various inalienable rights guaranteed under portions of and amendment to the United States Constitution, and for Plaintiffs to claim all rights, damages, and forms of relief obtainable under any available means, in the interest of justice, and through the authority vested in this court.

2. Plaintiffs seek all available forms of declaratory, injunctive, retrospective, and prospective relief that correspond to the various causes of action and prayers for relief herein.

3. This case involves application of education laws that are general and specific in nature in which plaintiffs allege widespread violations of substantive and procedural rights.

4. This case includes violations of civil and constitutional rights, protections and entitlements, and grievous allegations of deprivation and discrimination.

5. In addition plaintiffs will not assert, express or imply (and do hereby disclaim any potential

allusions to) any manner of rights or interests alluding to any aspects of controversy under any

state law excepting that a matter must or might be fairly characterized as an act, practice, pattern

or policy which exists or functions in derogation of federal law or federal rights.


**B. Parties**

6. Plaintiffs, Edward and Kate Holley, reside at 3 Anna Lane, Ballston Lake,

NY 12019. Edward and Kate Holley are the parents and legal guardians of Caleb Holley and

have been granted particular rights and protections as to be free themselves from discrimination,

retaliation, intimidation, distress and duress. Plaintiffs have also been granted particular rights in

order to access and protect the rights afforded to their son Caleb Holley -as a child with a

disability. Caleb Holley is a child with a disability, a non-white, a United States Citizen and

is afforded particular rights and equal protections from discrimination and deprivation. Caleb

Holley also resides at 3 Anna Lane, Ballston Lake, NY 12019.

7. Defendant, Board of Education of the Shenendehowa Central School District (SCSD) is

located at 5 Chelsea Place, Clifton Park, NY 12065. SCSD is the public corporation and

local governmental entity responsible to provide children with disabilities who live within the

district with a free appropriate public education. SCSD is located within Saratoga County in the

State of New York. SCSD receives both federal and state funds to educate children. SCSD is the

local educational agency (LEA) within the meaning of the IDEA. Defendant, Shenendehowa

School Board of Education, is composed of such members, Karen Boiko, Gary DiLallo, Vincent

Aceto, William Casey, Charles Huff, and Erika Riebel all of whom are sued in this action in their individual and official representative capacities.

8. Defendant, Dr. Robert McClure, as former Superintendent in the SCSD during the 2001-2002, 2002-2003, 2003-2004 school years is sued in his individual and official capacity. As Superintendent, Dr. McClure was responsible for ensuring that appropriate educational services are provided and that the rights and entitlements of plaintiffs are upheld.

9. Defendant, Michael Smith, Director of Special Education in the SCSD is sued in his individual, official and professional capacity. As Director, Defendant Smith is responsible for the supervision of all special education services and compliance with governing laws

10. Defendant, Dorothy Donlon, former Committee on Special Education (CSE) Chairperson in the SCSD during the period of 2001-2002, 2002-2003 school years is sued in her individual, official and professional capacities. As CSE Chairperson, Dorothy Donlon had the responsibility to insure that the Holley's rights and entitlements were upheld and services were rendered in accordance with laws and regulations governing Caleb's education.

11. Defendant, Sandra Gonzalez, Committee on Special Education Chairperson in the SCSD during the 2002-2003, 2003- 2004 school years, is sued in her individual, official, and professional capacities. As CSE Chairperson, Sandra Gonzalez had the responsibility to insure that the Holley's rights and entitlements were upheld and services were rendered in accordance with laws and regulations governing Caleb's education. Defendant Gonzalez was made aware of Caleb's needs, was aware of plaintiffs allegations, yet conspired with others to deny educational rights, discriminate and retaliate against the Plaintiffs.

12. Defendant, Dr. Michelle Boretti, School Psychologist and CSE Member in the
SCSD during the 2001- 2002 school year, is sued in her individual, official, and professional
capacities. As school psychologist and CSE member, Defendant Boretti was
required to be knowledgeable of the needs and rights of Plaintiff Holley, but conspired with
others to intentionally deny these rights and discriminate against the Plaintiffs.

13. Defendant, Erin Iovinella- Serritella, School Psychologist and CSE Member in the SCSD
during the 2001-2002, 2002-2003, 2003- 2004 school years is sued in her individual, official, and
professional capacities. As school psychologist and CSE member, Defendant Serritella was
required to be knowledgeable of the needs and rights of Plaintiff Holley, but conspired with
others to intentionally deny these rights and discriminate against the Plaintiffs.

14. Defendant, Jeanne Marie Wendth, Special Education Teacher and CSE Member in the SCSD
during the 2002-2003, 2003-2004 school years, is sued in her individual, official, and
professional capacities. As special education teacher and CSE member, Defendant Wendth was
required to be knowledgeable of the needs and rights of Plaintiff Holley, but conspired with
others to intentionally deny these rights and discriminate against the Plaintiffs.

15. Defendant, Joan Frolish, Speech and Language Pathologist and CSE Member in the SCSD
during the 2001-2002, 2002-2003, 2003-2004 school years is sued in her individual, official,
and professional capacities. As a Speech and Language Pathologist, Defendant Frolish was
required to be knowledgeable of the needs and rights of Plaintiff Holley, but conspired with
others to intentionally deny these rights and discriminate against the Plaintiffs.

16. Defendant, New York State Education Department is the State Education Agency
(SEA) pursuant to IDEA and is located at Education Building, Albany, New York 12234.

New York State Education Department (NYSED) is responsible to supervise special education
and related services to disabled students in New York State. States that accept federal funds are
required to provide each child with a disability a "free appropriate public education" (FAPE)
composed of special education and related services. In order to solve disputes, the statutes
require states to provide parents of children with disabilities an "impartial due process hearing"
(IH) before a hearing officer and then in a two-tiered system like that in New York State, to then
petition the State Review Officer to redress the claims for the protection of the rights of a child
and his parents. Impartial Hearing Officer, Dolores Freed, is sued in her individual,
and official capacity. Appeals Coordinator for the Office of State Review, Nellie
Perez, is sued in this action in her individual and official capacity, State Review
Officer, Paul Kelly is sued in this action in his individual and official capacity.

## C. Jurisdiction and Venue

17. For the various forms of relief that the Plaintiffs seek, and given full consideration
that this civil case entails multiple sets of fairly complex circumstances, with various and
numerous causes of action contained hereunder, jurisdiction and venue over all subject matters
herein are properly had and held within this court and the same matters arising, under any or all
of the following provisions of relevant federal law:

a) 28 U.S.C. § 1331- regarding issues arising under the Constitution, laws, or treaties of
the United States;

b) 28 U.S.C. § 1343- regarding civil actions authorized by laws for deprivations of
rights, and/or privileges, of citizens of the United States;

c) 28 U.S.C. § 1367- regarding supplemental jurisdiction over interrelated claims;

d) 20 U.S.C. §§ 1221 et seq., - regarding the general provisions concerning education;

§ 1232 et seq., - regarding requirement for states to monitor compliance by

local agencies with various federal educational requirements, Family Educational and

Privacy Rights (FERPA), protection of pupil rights

e) 20 U.S.C. § 1400 et seq., - regarding the Individuals with Disabilities Education Act;

f) 20 U.S.C. §§ 1412 -1413 et seq., - regarding State Responsibilities;

g) 20 U.S.C. § 1415 - regarding Procedural Safeguards and Requirements;

h) 29 U.S.C. 794 - regarding students with disabilities receiving a free appropriate public

education (Section 504 of the Rehabilitation Act of 1973);

i) 42 U.S.C. § 12101 et seq., - regarding the prohibition of discrimination on the basis of

disability in State and local government, and public accommodations (Americans with

Disabilities Act of 1990)

j) 42 U.S.C. §§ 408 - regarding equal rights and protection under the law as

is enjoyed by white citizens; § 1982 – regarding property rights as is enjoyed by white

citizens (education as property right)

k) 42 U.S.C. §§ 1983 -regarding civil action for deprivation of rights; § 1985 - regarding

deprivation under color of law, conspiracy, prevention and aiding; § 1986- regarding

action for neglect to prevent § 2000(b) - regarding deprivations of civil rights within

public facilities, § 2000(b) (2) - regarding individual remedies for deprivations of civil

rights within public facilities

l) 5 U.S.C. § 551 et seq., - regarding Administrative Procedures

m) The Fourteenth Amendment to the United States Constitution – regarding deprivation

of life, liberty or property without due process of law, equal protection of the laws

18. Venue is proper in this court under 28 U.S.C. § 1391(b)

## D. Exhaustion of Remedies

19. Plaintiffs have exhausted administrative remedies regarding the matters in this complaint.

Plaintiffs filed two complaints to NYSED dated September 14, 2003 and September 19, 2003.

20. Plaintiffs requested a fair hearing on May 10, 2004. The hearing was completed

over 4 days of hearing. The Hearing Officer (HO) rendered her decision on November 15, 2004.

21. The plaintiffs appealed the decision of the hearing officer to the State Review Officer. The

State Review Officer (SRO) issued his decision on April 15, 2005. Decision No. 04-110.

## E. Facts

22. Caleb Holley was referred to the Committee Special Education (CSE) by

his parents on April 28, 2001. Parent signed consent to evaluate on May, 1, 2001.

23. The initial evaluation consisted of a Psycho-Educational Evaluation, an

Occupational Therapy evaluation and an attempted Physical Therapy evaluation.

A speech and language evaluation and physical therapy evaluation would be completed in the

fall as part of the initial evaluation.

24. Parent signed the initial placement consent on June 21, 2001 for an interim special education

placement in a BOCES summer program. The school district recanted and did not make

available the interim special education placement.

25. The initial CSE meeting was held on July 18, 2001. The IEP dated 7/18/01 provided for

Academic Instruction, Speech and Language Therapy and Occupational Therapy to be provided

in the home for the summer of 2001. The school district did not provide the special education

and related services due to "staff shortage".

26. The CSE met on August 30, 2001 and recommended:

- placement in an out - of -district WSWHE BOCES Program at Moreau Elementary School, South Glens Falls.

- Speech and Language Therapy services 5X week /individual/ 30 minutes

- Occupational Therapy services 3X week/ individual 30 minutes and 1X week/ group for 60 minutes.

- Full time 1:1 teaching assistant 6. 5 hrs./ day

- Counseling Consultation (with parents) 2X month (30 minutes each)

- Speech and Language Evaluation in Fall 2001

- Physical Therapy Evaluation in Fall 2001

- Provide transition from part to full time in September

27. The CSE stated that the basis for the placement recommendation to the BOCES classroom

was based on a Speech and Language Evaluation and a Teacher Observation/ Report.

Caleb hadn't had a Speech and Language Evaluation, hence the recommendation was

based on a non-existent evaluation. No prior services had been provided, hence a teacher

observation/ report was also impossible and non-existent.

28. After 5 days in the BOCES classroom the teacher and staff determined that Caleb's current

level of functioning was higher than the population being serviced and that the program did not

provide an atmosphere that would allow Caleb to develop social skills through peer interaction. The student was withdrawn on September 21, 2001 from the program by the CSE Chairperson.

29. The CSE met again on October 1, 2001. The CSE recommended:

- placement in district in a Language Concepts program. The program was a full day program ½ day regular education, ½ day self-contained classroom.

- Speech and Language Therapy services 1X week /individual/ 30 minutes, 2-3 X week/ group

- Occupational therapy services 1X week/ individual/ 1X week group

- provide sensory diet to be administered throughout day

- full time shared aide services 6.0 hours day

- program review in November

30. The CSE made significant reductions to the recommended related services without any new evaluative data.

31. The CSE recommended a sensory diet. This was never completed.

32. The prior recommendations for a speech and language evaluation and physical therapy evaluation recommended on the 8/30/01 IEP were never completed but taken off the subsequent IEP of 10/1/01.

33. There was no transition plan for the transition to the language concepts program.

34. The CSE did not schedule the review until December 6, 2001.

35. The school district never successfully transitioned Caleb to the regular education portion of the program. Caleb only attended the self contained portion of the program approximately 2-3 days per week for the entire 2001-2002 school year.

36. The school district consulted with Karner Intensive Developmental Services (KIDS) for transitioning difficulties that interfered with Caleb's ability to attend school. However, the CSE did not make recommendations for a functional behavioral assessment and/or behavior intervention plan, nor a transition plan.

37. The CSE met again on December 6, 2001. The only change made in the services recommended was an increase in occupational therapy consultation for the teacher from 1X month to 2X month through June.

38. The CSE made no recommendations for a Functional Behavior Assessment, Intervention Plan or Transition plan in order to achieve an additional goal that Caleb would transition into the kindergarten classroom by saying good-bye to his mother and walking in quietly under his own power within 5 minutes of the morning bell, allowing for 1 prompt, 9/10 occasions in the classroom setting by June 2002. Caleb did not transition to the regular education portion of the program at any time after the December 6, 2001 CSE meeting.

39. The student was getting his occupational therapy and speech and language services infrequently due to his lack of attendance.

40. At the advice of KIDS, the plaintiffs were having Caleb independently evaluated by a psychiatrist at Four Winds Hospital, Saratoga. The CSE scheduled a meeting for review on March 28, 2002. The CSE meeting was scheduled at the exact time and date of a scheduled consultation at Four Winds with Dr. Christina Atkin. Plaintiffs were informed that they would need to choose which to attend, -the CSE meeting or the consultation- as the CSE would not reschedule the meeting until June.

41. The CSE scheduled the meeting for June 12, 2002.

42. During the 2001-2002 school year the student only attended the self-contained portion of the program approximately 77 days for 2-3 hours per day.

43. Due to his lack of attendance to the regular education classroom, Caleb had no access to the general curriculum during the 2001-2002 school year and was infrequently provided academic instruction in the self-contained classroom.

44. On May 21, 2002 the plaintiffs requested an independent evaluation.

45. By letter dated May 29, 2002 the CSE approved an occupational therapy evaluation. The independent occupational therapy evaluation was completed on June 5, 2002.

46. The behavioral evaluation, including a classroom observation, was not approved until the CSE meeting on June 12, 2002. It was not until the CSE meeting on June 12, 2002 that the plaintiffs were notified that the behavioral evaluation was approved.

(There is a postdated document May 29, 2002 granting approval for the behavioral evaluation. However; it was after the CSE meeting on June 12, 2002 that the CSE sent the approval letter for the evaluation that was dated May 29, 2002.)

By the time the CSE met and approved the evaluation, Caleb was not attending school at all. The CSE Chairperson stated that a classroom observation was necessary in order for the CSE to even consider an independent evaluation. The evaluation was never completed.

47. The plaintiffs were not invited to a CSE meeting on June 1, 2002.

48. At the CSE meeting on June 12, 2002 plaintiffs were handed a completed IEP

for the summer with the words FINAL at the top.

The CSE recommended:

- occupational therapy 2X week/ group /30 minutes

- 10:1:2 special education class (in an undetermined place)

49. Although the IEP identified numerous needs, there were no recommendations

made to address those needs. Dr. Christina Atkin, Psychiatrist and Barbara Quinn, KIDS

Consultant identified areas of needs and made recommendations.

50. The plaintiffs did not send Caleb to the summer program that was recommended

by the CSE because the IEP and placement recommendation was woefully inadequate to meet

Caleb's needs. Caleb was privately provided individual occupational therapy 3X week/

individual /45 -60 minutes for the summer at the plaintiffs expense based on the

recommendation of the independent occupational therapy evaluation completed on June 5, 2002.

51. The independent occupational therapy evaluation reported:

- that Caleb was in the less than 2nd percentile for sensory processing, and sensory modulation

- a disorganized sensory system

- significant sensory motor delays

- poor registration

- sensory sensitivity

- sensory seeking and sensory avoidance behaviors

- low muscle tone throughout

- postural instability
- compromised tactile discrimination skills
- compromised modulation system

52. On June 4, 2002 Dr. Christina Atkin, Psychiatrist at Four Winds made recommendations:

- set up an appropriate summer program
- social skills class
- keep small groups as small as possible
- a much smaller class next year
- a non-punitive teacher well familiar with pervasive developmental disorder
- special education consulting teacher closely involved in programming
- coordination between teacher, aide and family

53. A year end report provided in June 2002 from Barbara Quinn, of KIDS contained recommendations:

- a very structured consistent classroom in the fall
- direct support to follow lesson instructions and academics
- direct attention to social skill development
- family to work with behavioral specialist
- establish behavioral plans for toilet training and transitioning
- behavioral plan for sensory and anxiety
- communication between school and home, via daily/weekly journal

- review in October

54. The CSE met on August 16, 2002. At the CSE meeting on August 16, 2002 plaintiffs were

handed a completed IEP for the 2002-2003 school year with the words FINAL at the top.

The CSE recommended:

- classification changed to autism
- placement in a regular education classroom all but 60 minutes a day. Mainstream for all academics, homeroom, PE, and lunch
- placement in the 12:1:2 class for 60 minutes day
- counseling 1X week group for 30 minutes
- occupational therapy Services 2X week/ individual/ 30 minutes
- occupational therapy Consult 1X week/ 30 minutes
- shared aide 6.0 /hours day
- monthly meetings with parent
- regular transportation

55. The CSE stated the basis for this recommendation was the independent

occupational therapy evaluation. There is no such recommendation or implied assertion

contained in that evaluation. The CSE had refused to review the occupational therapy evaluation

at the CSE meeting that the recommendation was supposedly based on.

56. The CSE did not revise the IEP to address the lack of progress toward the

transition goal that was on the IEP from December 6, 2001.

57. The CSE made no good faith effort to assist Caleb to transition to school.

58. Plaintiffs disagreed with the IEP and placement recommendation. The IEP was woefully

inadequate to address Caleb's needs.

59. The CSE Chairperson threatened to report the plaintiffs for educational neglect and initiate a PINS order if Caleb was not at the school on September 5, 2002, unless the plaintiffs sent a letter of intent to home-school. Because of the fear from the threats to report plaintiffs for educational neglect and a PINS order, the plaintiffs sent a letter of intent dated September 5, 2002 and stated that they were home-schooling Caleb because there was no appropriate placement recommendation made by the CSE. Plaintiffs requested that Caleb's special education needs and services be provided in the home beginning with occupational therapy, 3X week for 45 minutes.

60. Dr. Gayle Buckley, Caleb's pediatrician wrote a letter on September 10, 2002 in an attempt to get services in place for Caleb.

Dr. Buckley reported:

- diagnosis of autism
- enlarged motor clumsiness
- fine motor problems
- ability to understand abstract thoughts is limited
- difficulties in social settings
- is not toilet trained and is an area of frustration for him

61. Dr. Buckley recommended:

- home schooling and that a special education teacher competent in the area of autism act as a consultant to Mrs. Holley

- that Caleb receive occupational therapy services in the home

- that Caleb receive speech and language services in the home

- that Caleb receive physical therapy services in the home

62. By letter dated September 19, 2002 the plaintiffs requested:

- in addition to the OT 3X week for 45 minutes;

- that the school provide related services of physical therapy, 2X week 30 minutes in the home

- speech and language therapy, 5X week, 30 minutes in the home

- special education consulting teacher indirect 1X week /1 hour for 1 month at convenient location for the district, with review in one month to determine future amount needed

63. The CSE Chairperson then informed the plaintiffs that the occupational therapy provided in the home would be 2X week /30 minutes based on the 8/16/02 IEP. There were no goals and objectives for occupational therapy on the IEP.

64. In late September after only several occupational therapy sessions the occupational therapists informed Plaintiff Holley in front of Caleb that her primary goal would be transitioning Caleb to the school program as per instructions from the CSE Chairperson. The therapist said it would be today or the next time that she would be putting Caleb in car. Plaintiffs wrote a letter to the CSE Chairperson stating that occupational therapy services would have to be postponed until an agreement could be reached with the CSE that would address Caleb's needs.

65. The plaintiffs had notified the school that they disagreed with the IEP.

66. The CSE refused to provide the services requested by the plaintiffs.

67. An independent Neuro-psychological evaluation was completed by Dr. Paula Zuffante on

September 16, 2002.

Among the recommendations were:

- placement in a program that offers a smaller consistent setting, with fewer transitions and more opportunity for independent functioning

- careful planning and pre-setting of activities will be necessary to help Caleb engage in more structured group activities

- systematic desensitization techniques

- sensory regulation therapies

- a collaborative problem solving approach

- decrease in visual and auditory stimulation in the classroom

68. Dr. Zuffante had reported and identified numerous areas of need that were not addressed by

the CSE.

69. The CSE never reported the results of the tests administered by Dr. Zuffante on an IEP.

70. No representative of the school district would attend the meeting referred to by Dr. Zuffante

that took place with other professionals that she recommended they attend.

71. An independent Speech and Language evaluation was completed by Melissa Spring, Speech

Language Pathologist on September 27, 2002.

Among the recommendations were:

- Speech and language therapy services 3X 30 minutes weekly in a group of no more than three

- Special education teacher consult with Mrs. Holley weekly

- 1:1 aide

- Small group instruction, which will reduce distractions, improve auditory comprehension, and reduce over stimulation

- Caleb needs a balanced reading approach

- 12 month programming

72. Melissa Spring had reported and identified numerous areas of need that were not addressed by the CSE.

73. The CSE never reported the results of the tests administered by Melissa Spring on an IEP.

74. The CSE did not initiate and/or conduct a CSE meeting to review or revise the IEP at any time during the 2002-2003 school year.

75. The plaintiffs did not send an Individualized Home Instruction Plan.

76. During the 2002-2003 school year Caleb was at home with no services being provided to him by the school.

77. The school district violated their responsibility in regard to compulsory education law and did not determine if the student was receiving any education.

78. By letter dated May 14, 2003 the plaintiffs initiated and requested a CSE meeting. Plaintiffs requested the meeting be scheduled in the afternoon.

79. The CSE sent two invitations for meetings on June 13, 2003, and June 24, 2003. The CSE stated there was a mistake and the CSE meeting for Caleb was June 24, 2003 at 9 a.m.

The plaintiffs requested the information that would be presented at the meeting be provided ahead of time. The CSE did not provide any information prior to the CSE meeting.

80. The CSE met on June 24, 2003 and recommended summer services be provided in the home:

- occupational therapy services 3X week/ 30 minutes

- speech and language therapy, 3X week/30 minutes

81. The CSE meeting was tabled and the plaintiffs requested another meeting to be scheduled.

82. By letter dated July 3, 2003 the plaintiffs notified the school that it was their intention for Caleb to attend school for the 2003-2004 school year.

83. Dr. Gayle Buckley, Caleb's Pediatrician wrote a letter dated 7/14/03 with recommendations:

- speech therapy 3X week/ 30 minute sessions

- occupational therapy 3X week/ 45 minutes

- special education instruction minimum of 1 hour a day

- small classroom of no more than 6 children

- 12 month programming

84. Dr. Christina Atkin, Caleb's Psychiatrist at Four Winds by letter to the school district dated 6/18/03 made recommendations:

- 6:1:2 class for high functioning PDD students which is consistent and quiet in it's environment

- non-punitive/positive reinforcement approach

- transition planning with visual cues, set ups and positive reinforcement

- sensory processing

- one to one instruction as needed

- speech and language therapy for language deficits and social skills
- social skills training
- lunch bunch
- assistance and training in self help skills
- appropriately trained personnel
- assistance and training in coping skills and problem solving

85. The CSE met on August 13, 2003 and placed the student on home/hospital instruction for a duration of 30 days from 9/03/03- 10/02/03 and recommended:

- occupational therapy 1:1 5X every 2 weeks for 60 minutes provided in home
- speech and language therapy 1:1  5X every 2 weeks for 60 minutes in home
- Behavior Intervention Consultation 3X month

86. The speech and language therapist and occupational therapist both stated at the CSE meeting that 30 minutes was not an appropriate amount of therapy time for Caleb. The CSE then increased the time to 60 minutes but reduced the frequency to 5X/ bi-weekly vs. 3X/ week.

87. The CSE made no recommendations for any academic instruction to be provided.

88. The CSE chairperson provided school records to a psychologist without parents' knowledge or consent.

89. The CSE did not provide any goals and objectives for the speech and language therapy services to be provided. The goals and objectives for the occupational therapy services to be provided were 14 -15 months old.

90. The CSE stated by letter dated 9/23/03 that the occupational and

speech therapists were trying to implement services but were denied access due to

family occurrences. The CSE did not state that the therapist did not have goals

and objectives and that the services could not be implemented for that reason.

91. The CSE met again on 10/2/03. (There was no IEP provided in regard to the 10/2/03 CSE

meeting until mid to late November after the NYSED investigation. The CSE then provided an

IEP dated 10/2/03.)

92. There was no provision for any services in the home but Caleb would be

evaluated by school psychologist Erin Iovinella-Serritella between 10/2/03 and the

next scheduled CSE meeting on 10/22/03.

93. The CSE stated that goals and objectives needed to be created and they also would be

completed between 10/2/03 and 10/22/03.

94. Erin Iovinella- Serritella, School Psychologist completed an educational evaluation on Caleb

October 10, 2003. Prior to the test being completed Ms. Iovinella-Serritella asked the plaintiffs

what were Caleb's areas of weakness. The school psychologists only completed sub-tests in

those areas of weakness. Although the IEP reported test results, the parents were not

provided a copy of the report until after the CSE meeting on October 22, 2003. Ms. Iovinella-

Serritella made no recommendations in her report.

95. The CSE met again on October 22, 2003 and recommended:

- placement in the 12:1:3 academic needs classroom at  Chango Elementary School

- behavior intervention consultation 3X month

- occupational therapy 1:1/ 5X every 2 weeks for 30 minutes

- speech and language therapy 1:1 / 5X every 2 weeks for 30 minutes

96. Caleb was not provided occupational therapy from September 2003 until the end

of January 2004 due to the fact that no therapist was available to provide the services.

From January 2004 – June 2004 Caleb was provided occupational therapy in the home.

97. The occupational therapy and speech and language therapy were provided for 60 minutes

each session. The CSE Chairperson refused to have the IEP state the accurate amount of time

that the therapists would be providing therapy.

98. Caleb was provided speech and language therapy in the home from the end

 of October 2003 until mid January 2004. Caleb was not provided speech and language therapy

from January 2004 until July 2004 due to there being no therapist available to provide therapy.

99. Although the district was providing the occupational therapy in the home,

plaintiffs were informed by the CSE and the school district attorney that if they

wanted Caleb to have speech and language services they could bring him up to the

school to his program for his speech and language services.

100. Caleb did not attend the program at Chango as recommended by the CSE.

101. The plaintiffs disagreed with the IEP and placement recommendation.

102. The CSE met again on January 6, 2004. The CSE met to make the goals and

objectives measurable as mandated by NYSED. The plaintiffs brought a private psychologist

who had been working with Caleb to the CSE meeting to address numerous issues. The CSE

Chairperson refused to allow any issues to be discussed other than making the goals measurable.

103. The CSE met again on February 26, 2004.

104. The school stated that they would attempt to get a speech therapist to provide services in the home but that Caleb could get speech and language services at his placement at Chango Elementary School.

105. Shenendehowa and NYSED shirked their responsibility in regard to compulsory education law. Caleb was at home for the 2003-2004 school year receiving some occupational therapy services and some speech and language services. During the 2003-2004 school year the school district did not provide any academic instruction.

106. The plaintiffs have not been provided access to review all of Caleb's educational records.

107. Repeatedly and voluminously, information in the record is not accurate and/or is contradictory.

108. The CSE did not revise the IEP's appropriately to meet the students needs based on the results of evaluations that were completed, based on information from the plaintiffs, based on the students identified needs, and/or based on lack of expected progress.

109. State Complaints to NYSED:

On September 14, 2003 and September 19, 2003 the plaintiffs wrote complaints to NYSED in regard to Caleb's education.

110. After a conversation with Rusty Kindlon, Regional Associate, on September 24, 2003 plaintiffs wrote a letter requesting clarification and explanation.

111. NYSED informed parents by letter dated October 21, 2003 that the compliance issues were related and that NYSED would respond with one letter of findings. There were numerous allegations that NYSED would not investigate.

112. NYSED informed plaintiffs by letter dated November 17, 2003 that they would not be able to issue a letter of findings within the 60 day timeline.

113. By letter dated December 1, 2003 NYSED reported that of the allegations they investigated, one was sustained and the district was required to convene a CSE meeting to develop measurable annual goals for the 2003-2004 school year and submit to NYSED by January 10, 2004.

114. Plaintiffs requested a fair hearing on May 10, 2004. The hearing was completed over 4 days of hearing. The Hearing Officer (HO) rendered her decision on November 15, 2004. The hearing officer re-identified the parent exhibits in her decision thus providing no identity of the parent documents.

115. The Hearing Officer did not base her decision on the record of the proceeding before her.

116. The Hearing Officer (HO) did not set forth the reasons and factual basis for her determination.

117. The decision of the hearing officer did not reference the hearing record to support the findings of fact. The findings of fact are not facts based on the record.

118. There is no evidence in the transcript that the parent exhibits were marked for identification and received into evidence as were the school districts; the parent exhibits are merely provided in a list.

119. The hearing officer failed to apply the proper legal standards in her decision and failed to address numerous allegations.

120. The plaintiffs appealed the decision of the Hearing Officer to the State Review Officer. The State Review Officer (SRO) issued his decision on April 15, 2005. Decision No. 04-110.

121. The Office of State Review denied the plaintiffs access to inspect and review the record of the hearing.

122. By letter dated February 1, 2005 plaintiffs requested a time and date that they could review the exhibits forwarded to the Office of State Review. On February 9, 2005 plaintiff Holley went to the Office of State Review and was denied access to review the record. By letter dated February 13, 2005 plaintiffs again requested a time and date in which to see the records of the hearing. On February 23, 2005 plaintiffs received a reply from the Appeals Coordinator, Nellie Perez at the Office of State Review stating that plaintiffs would receive copies when duplication of the records was complete.

123. Plaintiffs were not provided a time and date to inspect and review the records of the hearing. By letter dated February 24, 2005 plaintiffs again requested a date and time to review the record of the hearing. On February 26, 2005 plaintiffs received copies of the school district exhibits and plaintiffs exhibits in the mail. Plaintiffs did not receive copies of numerous other records in the hearing.

124. The State Review Officer's decision is not based on the preponderance of evidence in the record. The State Review Officer failed to apply the proper legal standards in his decision and failed to address numerous allegations.

125. The State Review Officer did not set forth the reasons and factual basis for his decision.

126. The findings of fact are not facts based on the record.

127. On p. 2 of SRO Decision; the SRO stated:
*that the central issue in this appeal is the appropriateness of the program recommended by respondent's Committee on Special Education (CSE) on October 22, 2003.*

128. The request for due process dated May 10, 2004 stated:
*The parents maintain that Caleb has been denied a F.A. P. E. during the last three school years, specifically 2001-2002, 2002-2003, and 2003-2004...*

129. The petition to the State Review Officer includes numerous allegations and information in

regard to the 2001-2002, 2002-2003,2003-2004 school years and the continual denial of FAPE.

130. On p. 2 of SRO Decision; the SRO stated:
*At the time of the hearing, petitioners' son was nine years old and had been placed on home instruction by respondent's CSE as set forth in the child's last agreed upon individualized education program (IEP) dated August 13, 2003.*

131. At the time of the hearing, the student was placed in the 12:1:3 Academic Needs Classroom

at Chango Elementary School. At the time of the hearing, the student was receiving occupational

therapy 5X bi-weekly for 60 minutes provided by the district in the home. No other services

were being provided.

132. The CSE and school attorney stated that if the plaintiffs wanted the student to have any

speech and language services they could bring him up to Chango to his placement to get

services.

133. The IEP referenced by the SRO stated that the student was placed on home/ hospital

instruction (placed by the CSE) from 9-03-03 – 10-2-03. The SRO seemed to overlook

that there was no academic instruction provided for the student in his home/hospital placement

that was made by the CSE.

134. The SRO also stated that the plaintiffs agreed to the IEP on August 13, 2003.

135. On September 19, 2003 in a complaint to NYSED the parents stated:

> *On August 13, 2003 the CSE met again to discuss placement options for the 2003-2004 school year for Caleb. OT services were recommended for the duration of 30 days in Caleb's IEP. The IEP contained the same 3 long term goals from the IEP of 8/16/02...Caleb's needs in the area of Occuaptional Therapy –fine motor, visual motor, visual perception, sensory integration, sensory processing, sensory modulation, and self help skills all have a significant impact on his ability to function in an educational environment. This is evidenced by his low school attendance, behavioral issues, and anxiety issue. The issues and needs listed above are all related to his disability of Autism/ PDD. The significant needs Caleb has in these areas are related to his Sensory Integration Dysfunction and Sensory Neuro-Dysfunction and were not and still are not being addressed and/or provided for by the school district. It is the continual unwillingness and failure of the CSE to acknowledge and then address his needs by developing an appropriate IEP that is in compliance with the Federal and State Laws and Regulations (in order to facilitate a successful educational environment) that repeatedly deny Caleb a free appropriate public education based on his unique needs at no cost to us his parents.*

136. A letter to the district from plaintiffs dated July 3, 2003 informed them of plaintiffs

intention for Caleb to attend school as per his IEP.

137. On p. 2 of SRO Decision; the SRO stated:
> *For the summer of 2001 (summer 2001 IEP), the CSE recommended "itinerant services" in academic instruction for 90 minutes per week, OT for 90 minutes per week, and speech therapy for 90 minutes per week.*

138. The SRO continues through the top of p. 3 with elaborate descriptions of what the IEP

indicated. Amazingly enough the SRO failed to acknowledge that the CSE first recommended an

interim summer program and then recanted and then recommended the itinerant services but did

not provide these services either, recanting due to staff shortage.

139. On p. 3 of SRO Decision, the SRO relates information about the BOCES BEARS program

that Caleb attended for only 5 days at which time it was determined that the program did not

provide an atmosphere that would allow the student to develop social skills through peer

interaction.

140. The SRO omitted that the reason it was inappropriate was because it was determined that

Caleb's current level of functioning was higher than the population being serviced in the

program. The CSE stated the placement recommendation to the BOCES BEARS was based on 2

non-existent reports/evaluations.

141. The SRO failed to mention in the history on p. 4 of the Language Concepts program that the

student only attended the full day program 2-3 days during the 1st quarter.

On the 2-3 days he did attend it was by way of being dragged down the hall by classroom staff.

142. Caleb only attended the self-contained portion of the program 2-3 days per week for the

entire school year, which meant, among other things, that Caleb had no access to the general

curriculum.

143. Caleb was unsuccessful attending school and plaintiffs requested independent evaluations.

144. The evaluations indicated significant sensory integration issues and that Caleb was

overwhelmed by his environment and needed a smaller class in order to function.

145. The schools response to this was to mainstream Caleb.

146. On p. 5 of SRO Decision; the SRO stated:

> *For the 2002-2003 school year, the committee recommended that the child's*
> *classification be changed to autism. The CSE further recommended placement in*
> *a regular education first grade classroom with a pull out for 1 hour daily to a*
> *12:1:2 special education academic needs classroom. The CSE recommended the*
> *related services of individual OT twice per week, for 30 minutes to be pushed into*
> *either classroom, group counseling 1X week/ 30 minutes to be pushed into either*
> *classroom, and a full time 1:1 aide.*

> (The IEP indicated on the justification for the aide that it was a shared aide)

147. Amazingly enough the SRO seemed to overlook that as a student with autism

8 NYCRR § 200.13 requires:
(a)(4) that instructional services shall be provided to meet the individual language needs of a student with autism for a minimum of 30 minutes daily in groups not to exceed 2 or 60 minutes daily in groups not to exceed 6.

(a)(6) in those instances where a student has been placed in programs containing students with other disabilities, or in a regular class placement, a special education teacher with a background in teaching students with autism shall provide transitional support services in order to assure that the students special education needs are being met.

148. On p. 5-6 the SRO references two letters form plaintiffs requesting services to be provided in the home. The SRO failed to mention that the stated reason for the letter of intent to home-school was because of the threats by the CSE and the inappropriate placement recommendation made by the CSE.

149. On p. 5-6 of SRO Decision, the SRO reports the results of the independent Neuro-Psychological evaluation completed in September 2002. However the SRO fails to mention that the CSE never reported results of the evaluation on an IEP.

150. The same can be said of the independent speech and language evaluation completed in September 2002.

151. The SRO fails to mention that even after the independent speech evaluation the CSE Chairperson denied speech and language services for a student with autism because speech and language was not on the IEP.

152. The SRO failed to mention that the parents never sent an IHIP.

153. The student was ignored by the CSE and the school district ignored compulsory education laws.

154. The SRO fails to mention that it is the responsibility of the public agency to determine when to conduct an IEP meeting.

155. On p. 7 of SRO Decision; the SRO states:
> By letter dated August 28, 2003 the parents advised respondent's CSE chair that they were refusing OT services because it was inappropriate and refusing speech language therapy because there were no goals and objectives.

156. Plaintiffs stated by letter dated August 28, 2003 that OT and Speech and Language services were not being provided because of the inappropriate OT goals and objectives (The OT goals were 14 months old) and there were no goals provided for speech and language therapy. Due to the previous years fiasco with the occupational therapist not having goals but getting her goal from the CSE Chairperson on the phone, plaintiffs could not allow a repeat and waited for the CSE Chairperson to send the goals and objectives expeditiously - of which she did not.

157. Having no goals and objectives prior to services beginning didn't seem to be an issue for the SRO.

158. Plaintiffs were informed by the therapist that the goals and objectives sent to the CSE (that plaintiffs thought were the goals and objectives to begin services with) were not acceptable to the CSE Chairperson and that's why they were not sent with the IEP or to the therapists.

159. The SRO mentions a CSE meeting on September 23, 2003 but is not concerned that, if it did occur, the plaintiffs were not invited. There is nothing in the record that indicates plaintiffs were invited or that the CSE made any effort to assure their attendance. The record contains evidence of several CSE meetings that may have occurred without the plaintiffs being invited.

160. The SRO fails to acknowledge that the school district has been provided recommendations by professionals- two psychiatrists, neuro-psychologist,  pediatrician , KIDS Consultant- all stating that Caleb needs a smaller classroom (referring to smaller than the 12:1:2 he attended) or a 6:1:2 classroom in order to succeed.

161. The district, the HO, and the SRO purport that the district has implemented all the recommendations for the student made by the professionals with the exception of class size. The recommendation for class size has been made in order for the student to access an education.

162. Absent from the record is any prior written notice that would provide a reasonable explanation as to why the district refuses to take action in regard to class size for Caleb.

163. On p. 12 of SRO Decision, the SRO states:
    *Petitioner's son has been receiving services in the home for the last two years.*

164. During the last two school years the services provided by the district were:

During the 2002-2003 school year …... a total of 3 hours of occupational therapy.

During the 2003-2004 school year …….. occupational therapy 5X /biweekly for 1 hour from the

end of January 2004 through June 2004

….…..speech and language therapy 5X / biweekly for 1 hour

from the end of October 2003- mid January 2004

165. On p. 12 of SRO Decision, the SRO states:
    *The record reveals that the child was successful in a 12:1:1 language concepts class during the 2001-2002 school year.*

The student only attended school a total of approximately 77 days; 2-3 days per week; 2-3 hours per day of a full day program.

166. On p. 12 of SRO Decision, the SRO states:

> The record reflects that recommendations of each evaluator were incorporated into the IEP and can be implemented in the recommended academic needs classroom.

This above statement is so erroneous that due to this already too lengthy document we cannot even begin to address this at this time.

167. On p. 13 of SRO Decision, the SRO states:

> The child is transitioning from two years of home instruction to a classroom environment.

There is no evidence in the record that indicates Caleb has been on home/hospital instruction for the past two years. The record indicates that the CSE placed the student on home instruction for a period of 30 days from 9/03/03- 10/3/03.

168. On p. 13 of SRO Decision, the SRO states:

> The independent psychologist also testified that a 6:1 classroom is for children with low cognitive ability or severe behavioral problems. The independent psychologist also testified that a 6:1 classroom would not be in the LRE for the child.

169. The independent psychologist referred to by the SRO was a witness for the district who testified on behalf of the school district at the hearing who has never evaluated Caleb nor ever met him. Plaintiffs had never met the independent psychologist referenced until she testified.

Note: Due to the extraneous length of this document it was necessary to leave out information and or abbreviate various statements in regard to numerous facts that would otherwise have been included.

## F. Causes of Action

### 1. Count 1

*Discrimination and Gross Violations of Plaintiff's Rights under the 14th Amendment to the US Constitution; 42 U.S.C. §§1983, 1985, 1986, 2000*

170. Plaintiffs repeat and re-allege all paragraphs above and incorporate them herein by reference and furthermore hold.

171. Defendants, have wrongfully, willfully, and intentionally denied plaintiff's son access to a full day of education during 2001-2002, and have wrongfully, willfully, and intentionally denied plaintiffs son any academic instruction during the 2002-2003, 2003-2004 school years.

172. Defendents, named in this complaint as a result of their policies, procedures, practices, acts and omissions have denied plaintiffs and their son their substantive and procedural rights and have acted intentionally or with deliberate indifference and callous disregard of the child's privileges, rights, and immunities, under the Constitution and laws of the United States. Defendents have deprived Plaintiffs rights and entitlements through acts of conspiracy, prevention and aiding, and neglect to prevent. As a result, Caleb has suffered loss of educational benefit, emotional and psychological distress, damage and harm due to defendants' misconduct. Plaintiffs Ed and Kate Holley have suffered emotional distress, damage and harm, and deprivation of rights - all that would not have been visited upon them except by intentional actions and/or non actions of the defendants.

173. Defendants, Employees of Shenendehowa Central School District, Defendant Donlon, in her official and professional capacity, Defendant Boretti, in her official and professional capacity, Defendent Gonzalez, in her official and professional capacity, Defendant Iovinella-Serritella, in her official and professional capacity, Defendant Wendth, in her official and professional capacity, Defendent Frolish, in her official and professional capacity, have all acted intentionally or with deliberate indifference, callous disregard and gross misjudgment in actions and/or inactions of gross negligence, neglect of duty, conspiracy, professional incompetence and have denied plaintiffs and their son equal rights, privileges and protections under the Constitution and laws of the United States. Said misconduct has caused a denial of educational

benefit, emotional and psychological distress, and harm to plaintiffs and their son.

Defendants Donlon, in her official and professional capacity, and Defendent Gonzalez, in

her official and professional capacity, as CSE Chairpersons have acted in intentional and

deliberate acts of misrepresentation, falsifying documents, and retaliation toward plaintiffs and

their son and have caused a denial of educational benefit, emotional and psychological distress,

and harm to plaintiffs.

174. Defendant, Shenendehowa School Board of Education, composed of such

members, Gary DiLallo, Vincent Aceto, Karen Boiko, William Casey, Janet Grey,

Charles Huff, and Erika Riebel as a result of policies, practices, procedures, acts,

and omissions have been conducted in concert with neglect of duty and

responsibilities, and gross misjudgment that have denied plaintiff and their son a

free appropriate public education, and rights and privileges under the Constitution

and laws of the United States.

## 2. Count II
*Gross Violations of Plaintiff's Rights under 42 U.S.C. § 1400 et seq. (Individuals with
Disabilities Education Act) and 20 U.S.C. § 1221 et seq.; § 1232 (Family Educational and
Privacy Rights)*

175. Plaintiffs repeat and re-allege all paragraphs above and incorporate them herein by

reference and furthermore hold.

176. That the actions and refusals to act by *All* defendants caused the deprivation of rights and

entititlements afforded plaintiffs. These deprivations have caused harm to Caleb Holley and Ed

and Kate Holley.

177. Defendant, New York State Education Department has failed to exercise supervisory authority and responsibility as required by the IDEA to ensure that the SCSD complies with the IDEA to provide plaintiffs son a free appropriate public Education.

178. Defendant, New York State Education Department has failed to ensure that the New York State Education Department has an adequate complaint investigation and monitoring system, including an appropriate means to order sufficient remedies.

179. Defendant, New York State Education Department has failed to require Defendant SCSD to fully comply with the IDEA.  Defendant, New York State Education Department has failed to ensure that the due process hearing system is conducted consistent with the IDEA and its hearing officers rulings are consistent with the IDEA.

### 3. Count III
*Discrimination and Gross violations of Plaintiffs rights under 29 U.S.C. § 794 (Section 504 of the Rehabilitation Act of 1973)*

180. Plaintiffs repeat and re-allege all paragraphs above and incorporate them herein by reference and furthermore hold.

181. Defendents, Shenendehowa Central School District is a recipient of federal assisitance, and as such are subject to uphold the requirements of Section 504. By accepting federal funds, the District and it's Employees are required to provide supervision that is adequate enough to ensure that rights under Section 504 are not denied to qualified persons.

182. Defendant, Shenendehowa Central School District is a public elementary and secondary education system subject to uphold the requirements of Section 504 and the regulations implemented thereunder, that ensure school districts receiving federal financial assistance from the Department do not discriminate on the basis of disability, or retaliate against qualified persons, such as Caleb Holley (or his parents on his behalf), participating in their programs or activities; that these individuals are provided with the rights pursuant to all other laws and regulations afforded students in the district, including students with disabilities and their parents as applicable.

183. Section 504 regulation requires that a public elementary or secondary program must provide a free appropriate public education to each qualified disabled person within its jurisdiction. Defendant, Shenendehowa Central School District and Employees discriminated and retaliated against plaintiffs by their acts and/ or refusal to act in defiance of Section 504 and it's regulations throughout the 2001-2002, 2002-2003, 2003-2004 school years and caused them harm.

**4. Count IV**
*Discrimination of Plaintiff's Rights under 42 U.S.C.§ 12101(Americans with Disabilities Act of 1990)  and 42 U.S.C. §§ 408, 1982*

184. Plaintiffs repeat and re-allege all paragraphs above and incorporate them herein by reference and furthermore hold.

185. Shenendehowa Central School District is required to uphold statutory mandates and applicable regulations pursuant to Title II of the American with Disabilities Act of 1990 which incorporates Section 504 in its requirement for non-discrimination, as well as other non-discrimination regulations for equal rights and protections as enjoyed by white citizens.

186. Defendents have denied Caleb Holley and his parents Ed and Kate Holley rights protected them and these denials have caused them significant and irreparable harm.

## 5. Count V
*Gross violations of Plaintiff's rights under 5 U.S.C. § 551 et seq. and the 14th Amendment to the US Constitution.*

187. Plaintiffs repeat and re-allege all paragraphs above and incorporate them herein by reference and furthermore hold.

188. New York State Education Department failed to properly interpret applicable laws and regulations, failed to conduct a fair proceeding, failed to avoid arbitrary, capricious, and unreasonable actions, failed to support their decision by substantial evidence in the record, all denying fairness and due process rights and entitlements to plaintiffs.

## G. Prayer for Relief

189. This is a civil action seeking judgment, relief, and damages:

190. Declare that the acts and omissions of the defendants put forth in this complaint, (as well as those that are related in fact but not presented specifically due to the nature of this already lengthy document *and* Plaintiffs pro-se representation) violated plaintiffs rights under the Constitution and Laws of the United States.

191. Order permanent injunctive relief ordering defendants, their successors, and employees and all persons acting in concert with them to refrain from discriminatory acts, retaliation, fraud, complete indifference, neglect of duty, conspiracy and misrepresentation.

192. Order that the decisions and actions of New York State Education Department, Hearing

Officer and State Review Officer for the impartial hearing for the 2001-2002, 2002-2003, 2003-

2004 school years denied the plaintiffs their due process rights and therefore nullify both

decisions and conduct the proceeding in this court.

193. Order the execution and enforcement of the laws and regulations governing an

education for  plaintiffs son as a student with a  disability through the appointment

of a Master.

194. Order judgment in favor of plaintiffs for compensatory damages in the amount of

$ 1,000,000 for the irreplaceable loss of educational opportunity during precious formative years

of cognitive development for Caleb, and emotional distress inflicted upon Caleb and his parents

through the actions and inactions of defendents. The compensatory damage total to be allocated

to defendants according to the nature and scope of each defendants responsibility in the acts

herein.

195. Order judgement in favor of plaintiffs for punitive damages in the amount of $ 2,000,000

for the intentional, wrongful and unreasonable acts of discrimination, retaliation, conspiracy,

non-compliance with laws and statutes governing their responsibilities to Caleb Holley and his

parents, Ed and Kate Holley and for the denial of rights and entitlements. The punitive damage

total to be allocated to defendents according to the nature and scope of each defendents

responsibility in the acts herein. Defendents with such great responsibilities to the lives of

children and their families should not be shielded from their wrongdoings and should become an

example so that others in their official, individual and professional capacities do not also shirk

the responsibilities and duties that can affect a child's life and that of his family forever.

Society owes itself a favor to ensure that the gross misconduct of defendents is not bestowed upon another child and his parents for the state he may find himself in as a disabled child in the United States of America.

196. Order such additional relief as this court may deem just and proper.

Respectfully Submitted,

EDWARD AND KATE HOLLEY, PRO SE

Edward and Kate Holley
3 Anna Lane
Ballston Lake, NY 12019
(518) 899 0012

I declare under penalty of perjury that the forgoing is true and correct.

Signature of Plaintiff

Signature of Plaintiff

Sworn before me on this 1 day of August, 2005.

LOIS J. WHITBECK
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01WH5042107
QUALIFIED IN SARATOGA COUNTY
TERM EXPIRES 4/17/07